**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Krzysztof WOLINSKI, | Case No.: 25-cv-0802-AGS-LR |
|---|---|
| Plaintiff, | **ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF 4), DENYING AS MOOT PLAINTIFF'S EXTENSION REQUEST (ECF 3), AND SCREENING COMPLAINT** |
| vs. | |
| Howard MOSELEY, et al., | |
| Defendants. | |

Krzysztof Wolinski, an unrepresented state prisoner claiming civil-rights violations under 42 U.S.C. § 1983, is seeking to proceed *in forma pauperis*, that is, without prepaying the usual fees.[1] The motion to proceed IFP is granted, but all claims and defendants are dismissed except several claims against defendant Dr. Blaisdell and a due process claim against correctional counselor J. Cota and warden Rafael Acevedo. Wolinski may choose to amend or to proceed only with the claims that survive screening.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

Anyone instituting a civil action in a district court of the United States must typically pay a filing fee of $405—consisting of a $350 statutory fee plus an additional $55 administrative fee—although the administrative fee does not apply to persons granted leave to proceed IFP. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP. *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Prisoners seeking leave to

---

[1] The Court interprets the filing of Wolinski's prisoner-trust-account statement as an IFP request. (*See* ECF 4); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (noting that courts should "liberally construe" pro se submissions).

proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has insufficient assets. *See* 28 U.S.C. § 1915(b)(1) & (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Prisoners who proceed IFP must pay any remaining balance in "increments" or "installments," regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(1) & (2); *Bruce*, 577 U.S. at 84.

Wolinski's prison certificate shows he had an average monthly balance of $0.00 and average monthly deposits of $0.00 for the six months preceding the filing of this action, and an available balance of $0.00. (ECF 4, at 1.) The Court grants Wolinski's motion to proceed IFP with no initial partial filing fee.

## SCREENING

The Court must screen and dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2) screening); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b) screening). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same for § 1915A screening). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Complaint's Allegations

According to the complaint, on "June 17, 2024," Wolinski was transferred to the "Richard J. Donovan Correctional Facility." (ECF 1, at 2.) From there, plaintiff alleges many problems have arisen. First, he claims that he "immediately filed [a] request for physical access" to the law library but was denied by the librarian as an "act of retribution and retaliation for" Wolinski's pending "litigations." (*Id.* at 11.) He also alleges that two educators at the prison "subvert[ed] and despoil[ed]" his right to a PELL grant and prevented him from enrolling in college. (*Id.* at 3–4, 10–14.) This, in turn, would have allowed him to earn custody credits to shorten his sentence. And several defendants allegedly teamed up to retaliate against him when he complained about this lack of access. (*Id.* at 6–7, 21.)

Next, Wolinski claims that several defendants denied him appropriate and timely medical care after a surgery in retaliation for Wolinski's utilizing "in good faith the Prison Grievances process CDCR-602HC." (ECF 1, at 15–16.) Indeed, Wolinski goes on to claim that the retaliation infected several other portions of his incarceration, including being assigned to a cell only "50% the required size for" a disabled inmate, three "attempted" "malicious[]" "transfers," and the theft of "personal property." (*Id.* at 19, 25.)

Based on these facts, Wolinski claims defendants violated his rights in various ways, as discussed below.

### B. Medical Claim

Wolinski alleges Dr. Reynaga and defendant Dr. Blaisdell denied him adequate medical care in violation of the Eighth Amendment by "by their act of denying adequate Health Care Refill of Medications and other Prescriptions, and deliberately delaying required Care until his P[rimary] C[are] P[hysician] Dr. R. Zhang['s] return." (ECF 1, at 15–17.)

"[T]o prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id*. (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

"[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, plaintiffs must allege the prison official they seek to hold liable had a "sufficiently culpable state of mind." *Id.* "[T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if that official "knows of and disregards an excessive risk to inmate health and safety"; the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Wolinski was recovering from surgery when Dr. Reynaga and Dr. Blaisdell allegedly denied him appropriate medical care. (*See* ECF 1, at 7.) He needed his pain medication prescriptions refilled, but Dr. Blaisdell "deliberately" and "maliciously" declined to follow clear and specific instructions for post-surgical care issued by Wolinski's surgeon in failing to provide the pain medication, and told Wolinski "this will teach you to stop 602ing." (*Id*. at 7, 16.) (CDCR Form 602 for the California Department of Corrections and Rehabilitation is the inmate appeal form.) When Wolinski complained to the Donovan chief medical executive, Dr. Blaisdell purportedly retaliated on January 22, 2025, by altering his file and falsifying medical records to deprive him of a replacement for an air mattress destroyed by defendant correctional sergeant Keene, for which Wolinski was denied compensation. (*Id*. at 4, 16, 24.)

These allegations are sufficient to state an Eighth Amendment medical claim and to survive the "low threshold" of screening. *See Prewitt v. Roos*, 160 F. App'x 609, 610 (9th Cir. 2005) (holding that plaintiff "established a constitutional violation by alleging that the defendants acted with deliberate indifference to serious medical needs by failing

to provide his pain medication at the times and frequency specifically and repeatedly prescribed by [plaintiff]'s doctors and by failing to follow post-surgical discharge instructions").

But Wolinski fails to state a claim regarding his allegation that Dr. Blaisdell lied when he said Wolinski would not benefit from replacement of the air mattress that Keene destroyed. Critically, there are no allegations that any defendant was aware of and deliberately disregarded a serious medical need for the air mattress. *Farmer*, 511 U.S. at 834. The complaint at most alleges Dr. Blaisdell disagreed with Dr. Zhang and Wolinski that the air mattress was medically necessary. *See Colwell v. Bannister,* 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.").

## C. Retaliation Claim

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted). As to the second element ("because of"), Wolinski must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *See Watison*, 668 F.3d at 1114.

Throughout the complaint, Wolinski claims the defendants retaliated against him in various ways for engaging in litigation and filing inmate grievances. Yet the only factual allegation of retaliatory intent is that Dr. Blaisdell refused to provide Wolinksi a prescribed post-surgical pain medication and told Wolinski: "[T]his will teach you to stop 602ing." (ECF 1, at 16.) While those allegations sufficiently plead Dr. Blaisdell's retaliatory motive, Wolinski has not plausibly alleged that any other defendant took an adverse action against him *because of* his protected conduct. *See Rhodes*, 408 F.3d at 567–68; *Soranno's Gasco,*

5

*Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding that plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Accordingly, Plaintiff's retaliation claim against Dr. Blaisdell survives screening, but the retaliation claim is dismissed as to all other defendants.

## D.   Disability Claims

Wolinksi next alleges that, because he has "a physical disability," defendants' actions violated the ADA and the Rehabilitation Act. (ECF 1, at 9); *see also* 42 U.S.C. § 12132 (Title II ADA); 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act). He refers to himself as "an A.D.A. Title II Prisoner with serious medical needs" who is housed in a cell that is 50% smaller than necessary to accommodate a wheelchair. (ECF 1, at 19.) But Wolinski does not identify the nature of his disability nor provide any factual allegations regarding why he believes any defendant took any action because of that disability.

To state an ADA claim, Wolinski must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (cleaned up). "The elements of a claim under section 504 of the Rehabilitation Act are the same, with the additional requirement that the program at issue receive federal funds." *Cox v. Narkiewicz*, No. 19cv1486-JCC-MLP, 2019 WL 11753650, at *6, (W.D. Wash. Oct. 31, 2019). This is because "there is no significant difference in the analysis of rights and obligations created by the two Acts." *Payan v. Los Angeles Community College Dis.*, 11 F.4th 729, 737 (9th Cir. 2021).

The complaint fails to state a claim under either statute because Wolinski's

allegations are deficient as to at least two elements. The allegation that Wolinski "is an individual with a disability" is entirely conclusory, so it stumbles at the first element. And the complaint fails to plausibly allege that any defendant's actions were taken by reason of Wolinski's disability, so it falters at the fourth element as well.

In addition, the complaint fails to state an ADA claim because only individual defendants are named. The "ADA applies only to public entities." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). So a "plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his] individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

The ADA and Rehabilitation Act claims are dismissed.

**E.    Due Process Claim**

Wolinski also claims that several defendants violated his due process rights. Specifically, he alleges that: defendant Keene destroyed Wolinski's air mattress; Dr. Blaisdell, Nieto, and Mercado falsified and forged records to deprive Wolinski of a replacement mattress or compensation; Silva and Byrd-Hunt—the correctional officers in charge of incoming prisoner's property—stole his personal property, apparently a typewriter ribbon and a radio; Cota and Garcia attempted to transfer him several times from Donovan prison; and Cota and Acevedo "despoiled" Wolinski of good credits by preventing his "access to education." (ECF 1, at 4–6, 16, 18–19, 21, 26; ECF 1-2, at 3.)

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To plausibly allege a federal due process claim, Wolinski "must establish that one of these interests is at stake." *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Wolinski has failed to state a due process claim based on the loss of his personal property. "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "California Law provides an adequate post-deprivation remedy for any property deprivations." *Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95).

Wolinski has also failed to state a claim for denial of due process regarding the attempts to transfer him from R.J. Donovan Correctional Facility, because inmates do not have a due process right to reside at a particular prison. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that prisoners have no due process right to avoid transfers even to "a substantially less agreeable prison"); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (concluding California prisoner's placement at a "'level IV' prison rather than at a 'level III' prison does not . . . present an 'atypical and significant hardship'" sufficient to "conceivably create a liberty interest").

If Wolinski seeks to bring a claim arising from Acevedo's failure to process inmate grievances (*see* ECF 1, at 16), that cause of action is deficient. "There is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure.").

As for his last due-process claim, Wolinski alleges he was denied the opportunity to earn custody credits to shorten his sentence by attending college. A state may "provide[]" inmates with "a statutory right to good time" credit that "is to be forfeited only for serious misbehavior"; if so, such enactments are relevant to the due-process analysis. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). By "creat[ing] the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct," the state is also recognizing that "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [the inmate] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.*

California provides a right to educational merit credits: "all incarcerated persons eligible for Good Conduct Credit . . . shall be eligible for Educational Merit Credit." Cal.

1  Code Regs. tit. 15, § 3043.5(b). And the credit "shall be forfeited . . . upon a finding of
2  guilt of a serious rule violation." *Id.* § 3043.5 (f). So California "created the right to good
3  time" in this context, *see Wolff*, 418 U.S. at 557, and Wolinski alleges that defendants Cota
4  and Acevedo "denied [his] ability to earn extra credits toward his release because of Staff
5  retaliatory behavior and conduct against him" (*see* ECF 1, at 13, 18–19, 25). His
6  good-credits-related due-process claim thus clears the "low threshold" for § 1915(e)
7  screening. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).

8      Accordingly, plaintiff's Fourteenth Amendment due-process claim survives against
9  Cota and Acevedo.

**F.   Access-to-Courts Claim**

11      Wolinski claims that defendants Blahnik, Moseley, Acevedo, and Cota blocked his
12  access to the law library and otherwise denied him meaningful access to the courts. (ECF 1,
13  at 6–7, 9–12, 21.) Among other things, Wolinski alleges that Blahnik confiscated his legal
14  papers when he arrived at Donovan and has yet to return them. (ECF 1-2, at 2.)

15      Inmates share in the "fundamental constitutional right of access to the courts." *Lewis
16  v. Casey*, 518 U.S. 343, 346 (1996). To state a claim for a violation of that right, Wolinski
17  must allege facts showing actual injury arising from the lack of access to his legal materials,
18  that is, "actual prejudice with respect to contemplated or existing litigation, such as the
19  inability to meet a filing deadline or to present a claim." *Id.* at 348–49. In particular, he
20  must allege the loss of a "nonfrivolous, arguable underlying claim." *Christopher v.
21  Harbury*, 536 U.S. 403, 413–14 (2002) (cleaned up). The nature and description of the
22  underlying claim must be set forth in the pleading "as if it were being independently
23  pursued." *Id.* at 417. Wolinski has failed to satisfy those pleading standards, as he has not
24  plausibly alleged an actual injury. Rather, he incorrectly asserts that he is not required to
25  make such an allegation. (ECF 1, at 11.)

26      The access-to-courts cause of action is thus dismissed.

**G.   Equal Protection Claim**

28      Wolinski claims defendants discriminated against him in violation of his equal

protection rights while housed at Donovan prison. (ECF 1, at 2–6, 20–22, 25.) The Equal Protection Clause of the Fourteenth Amendment "requires the State to treat all similarly situated people equally." *See, e.g.*, *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). "To prevail on an Equal Protection claim brought under § 1983, Plaintiffs must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against them based upon membership in a protected class." *Id.*; *see also Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "race, alienage, national origin" as examples of characteristics protected by the Equal Protection Clause).

There are no factual allegations in the complaint that plausibly allege any defendant intentionally discriminated against Wolinski because of a protected status. Thus, his equal protection claim is dismissed.

**H.     Conspiracy Claim**

Wolinski alleges that Acevedo and Cota conspired to deprive him of access to the courts (ECF 1, at 6); that Dr. Blaisdell, Ochoa, Mondet, Blahnik, and Mihalic conspired to deny him replacement and compensation for his air mattress (*id.* at 7–8, 16); and that Cota and Garcia conspired to attempt to transfer him from Donovan (*id.* at 19.) He also claims the defendants conspired to racially discriminate against him in violation of 42 U.S.C. §§ 1981(c), 1985(3), and 1986. (ECF 1, at 5–6, 8, 17, 22.)

To state a conspiracy claim under 42 U.S.C. § 1983, Wolinski "must show an agreement or meeting of the minds to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quotation marks omitted). The allegations of conspiracy in the complaint here fail as entirely conclusory, as there are no factual allegations plausibly supporting a finding that any defendant agreed to violate Wolinski's constitutional rights. *See Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (holding that "conclusory allegations that [the defendants] conspired do not support a claim for violation

of [plaintiff's] constitutional rights under § 1983"); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.")

For the same reason, Wolinski has not stated a conspiracy claim under 42 U.S.C. §§ 1981(c), 1985(3), or 1986. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient" to state a claim under 42 U.S.C. §§ 1985 or 1986); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–69 (1993) ("[T]o prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia*, (1) that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action, and (2) that the conspiracy aimed at interfering with rights that are protected against private, as well as official, encroachment." (cleaned up).); *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) ("Section 1981 establishes substantive rights that a state actor may violate. It does not itself contain a remedy against a state actor for such violations.").

The conspiracy claims are dismissed.

**I.    State-Law Claims**

Finally, Wolinski brings several state-law causes of action, which largely fail, again excepting certain claims against Dr. Blaisdell.

### 1. *Infliction of Emotional Distress*

Wolinski claims the defendants deliberately and maliciously inflicted emotional distress on him. (ECF 1, at 8, 18, 23–24, 26.) Under California law, "[n]egligent infliction of emotional distress is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply." *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129 (1993); *see also Butler-Rupp v. Lourdeaux*, 134 Cal.App.4th 1220, 1226 n.1 (2005) (identifying the elements of negligent infliction of emotional distress as "1. The defendant engaged in negligent conduct; 2. The plaintiff suffered serious emotional distress; 3. The defendants' negligent conduct was a cause of the serious emotional

distress."). By contrast, a claim for intentional infliction of emotional distress requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (quotation marks omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id*.

Wolinski has plausibly alleged that Dr. Blaisdell intentionally inflicted emotional distress by violating his medical duty and intentionally refusing to provide Wolinski with his prescribed pain medication following his surgery, which caused Wolinski to suffer severe emotional distress.

Yet the complaint contains no allegations that any other defendant who owed a duty of care to Wolinski negligently caused him emotional distress nor committed conduct so extreme as to exceed the bounds tolerated by a civilized community. Indeed, even as to Dr. Blaisdell, there are no allegations that he was negligent in any manner, as Wolinski specifically alleges that Dr. Blaisdell deliberately (not negligently) denied medication in retaliation for Wolinski's filing of inmate grievances. Thus, the infliction-of-emotional-distress causes of action are dismissed, except for the claim of intentional infliction of emotional distress against Dr. Blaisdell.

### 2. *California Code of Regulations and CDCR Operations Manual*

Wolinski claims the defendants defied prison procedures regarding medical care, retaliatory actions, taking of personal property, transfers, housing, and education, all in violation of California Code of Regulations, tit. 15, §§ 3481–3486, 3120(a), 3122(a), 3160, 3162, 3190, 3193(b), 3486, 3481(d), and 3999, as well as the CDCR Department Operations Manual, Chapter 5, Article 53. The allegations that these provisions of California regulatory law were violated are entirely conclusory and fail to state a claim. *See McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (holding that allegations must

be sufficiently clear "to put defendants fairly on notice of the claims against them"); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy the plausibility standard to state a claim.). Thus, they are dismissed.

### 3. *California Constitution*

Wolinski claims systemic due-process violations involving the taking of personal property, attempted prison transfers, earning custody credits, denial of reasonable accommodations in housing and education, and retaliation, all in violation of the California Constitution, Art. I, §§ 3, 15, 17, and 19. (ECF 1, at 2, 7–8, 10, 15, 22, 24.) These state Constitution-related allegations fail to state a claim over which this Court will accept supplemental jurisdiction because they do not "put defendants fairly on notice of the claims against them." *See McKeever*, 932 F.2d at 798. For example, Article I, section 3 of the California Constitution provides that state citizens "have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good." Cal. Const. Art. 1, § 3. Wolinski does not articulate how any defendant has violated this article. Section 15 pertains to trial rights in criminal cases. Cal. Const. Art. 1, § 15. Wolinski does identify how any allegations in the complaint implicate that section. Section 17 states that "[c]ruel or unusual punishment may not be inflicted or excessive fines imposed." Cal. Const. Art. 1, § 17. Yet courts have recognized that this provision does not provide a private right of action. *See, e.g., Quezada v. California*, No. 12cv959-DAD (SAB), 2021 WL 2417119, at *5 (E.D. Cal. June 14, 2021) (citing *Giraldo v. Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 256 (2008)). Finally, section 19 protects against government taking of property for public use without just compensation. Cal. Const. Art. 1, § 19. Wolinski fails to allege his property was taken for public use.

The claims based on the California Constitution are dismissed.

### 4. *California Penal Code*

Finally, Wolinski claims violations of his right to accurate, unforged, and unperjured

medical and prison records under California Penal Code § 118.1, as well as violations of his right to review his inmate complaints under California Penal Code §§ 832.5 and 832.7. (ECF 1, at 5, 26.) Section 118.1 criminalizes the filing of false police reports; section 832.5 requires establishment of procedures to investigate and maintain records of citizen complaints; and section 832.7 relates to the confidentiality of police records. *See* Cal. Penal Code §§ 118.1, 832.5, 832.7. In addition to the conclusory nature of the allegations regarding these alleged statutory violations, Wolinski as a private citizen is unable to enforce criminal statutes. *See Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Thus, these Penal Code-related claims are dismissed.

### J. Other Stray References to Federal Law

In the complaint, Wolinski cites to various other federal laws, including: 20 U.S.C. § 1070 (statement of purpose and authorization of PELL grants); 34 CFR § 690.6 (duration of time to receive PELL grants); 18 U.S.C. § 1621 (criminalizing perjury); 42 U.S.C. § 1997d (prohibiting retaliation for reporting conditions of confinement); 42 U.S.C. § 12112 (prohibiting discrimination in employment); and 42 U.S.C. § 2000(e) (prohibiting discrimination in education under Title VII of the Civil Rights Act of 1964). In the unlikely event Wolinski intended these stray legal references to allege separate causes of action, they are all dismissed for being conclusory and failing to plausibly allege any cognizable legal claims.

## CONCLUSION

Thus, the Court orders as follows:

1. Wolinski's motion to proceed *in forma pauperis* is **GRANTED**.

2. Wolinski's motion for an extension of time to file his trust account statement is **DENIED as moot**. He already filed that document, and it has been docketed. (*See* ECF 3.)

3. The Secretary of the California Department of Corrections and Rehabilitation,

or that person's designee, must collect from Wolinski's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to 20% of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10. *See* 28 U.S.C. § 1915(b)(2).

4. The Clerk of Court must serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

5. All claims in the complaint are **DISMISSED**, except for the claims (1) against Dr. Blaisdell regarding Eighth Amendment denial of medical care, First Amendment retaliation, and state-law intentional infliction of emotional distress; and (2) against correctional counselor J. Cota and warden Rafael Acevedo for the good-credit-related Fourteenth Amendment due-process claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

6. By **September 19, 2025**, Wolinski must either: (a) notify the Court of his intent to proceed with only the surviving claims against defendant Dr. Blaisdell or (b) file a first amended complaint that cures the deficiencies noted above. Any amended complaint must be complete by itself without reference to the original complaint. Defendants not named and any claim not re-alleged in an amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

Dated: August 5, 2025

_____
Hon. Andrew G. Schopler
United States District Judge